885 F.2d 867
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Prince Albert POWERS, a/k/a Prince Albert Johnson,
Defendant-Appellant.
 No. 89-5002.
 United States Court of Appeals, Fourth Circuit.
 Argued July 14, 1989.
Decided Sept. 12, 1989.
 
 Charles Edward Mann for appellant.
 Robert Bullington Wilson, V, Special Assistant United States Attorney (Henry E. Hudson, United States Attorney, Robert E. Bradenham, II, Assistant United States Attorney on brief) for appellee.
 Before ERVIN, Chief Judge, and PHILLIPS and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Prince Albert Powers appeals his conviction in the United States District Court for the Eastern District of Virginia on one count of conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. Sec. 846 and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). Appellant contends that the evidence was insufficient to support his conviction. We disagree and affirm the judgment of the district court.
 
 I.
 
 2
 On July 15, 1988, George W. Cosey, Jr., was working as a confidential agent of the federal Drug Enforcement Administration (DEA) and the Office of Special Investigations (OSI) of the United States Air Force, Langley Air Force Base. In that capacity, Cosey visited a shoe store in Hampton, Virginia, to investigate local drug trafficking. While there, Cosey encountered Elton Futrell III and Calvin McLaurin, and discussed purchasing from them multiple kilograms of cocaine at $23,000 per kilogram.
 
 
 3
 Cosey reported the meeting with Futrell and McLaurin to his supervisors at DEA and OSI. Under DEA and OSI direction, Cosey negotiated further with Futrell and arranged to purchase two kilograms of cocaine. They agreed that the transaction should take place the evening of July 19 in the parking lot of the old Mary Immaculate Hospital in Newport News, Virginia.
 
 
 4
 On the evening of July 19, Cosey drove into the hospital parking lot, accompanied by DEA Special Agent Floyd H. Baker, also posing as a drug buyer. As was previously arranged, Cosey telephoned Futrell from a pay phone near the parking lot. Futrell drove into the parking lot five minutes later and requested that Cosey accompany him to his house to consummate the deal. Following DEA and OSI instructions, Cosey refused to leave the parking lot. Futrell informed Cosey that he would be back in touch with him and departed.
 
 
 5
 Shortly thereafter, a second automobile arrived in the parking lot, driven by the appellant Prince Albert Powers accompanied by Calvin McLaurin. McLaurin spoke with Cosey and requested that they relocate to complete the transaction. Again, Cosey refused to leave the parking lot. McLaurin and appellant drove off, only for appellant to reappear alone a short time later. Appellant informed Cosey and Agent Baker "[t]hat they already had it" and requested that Cosey follow him to a nearby store. Cosey again refused to leave the parking lot, and appellant departed.
 
 
 6
 Appellant and McLaurin returned together, and McLaurin indicated that he was willing to go through with the deal in the parking lot. Appellant drove off, leaving McLaurin in the parking lot with Cosey and Agent Baker. McLaurin made a telephone call on a portable cellular phone, stating that "it was OK for them to bring it."
 
 
 7
 Appellant returned ten minutes later. McLaurin directed Cosey to speak with appellant, so Cosey entered the automobile driven by appellant and sat in the back seat. Appellant told Cosey that "the coke is in the box" and handed a cardboard box to Cosey. Cosey removed two large, sealed packages from the box in order to take a sample of their contents. He had difficulty removing the wrapping from the packages, so appellant gave him a pen to use to tear the wrapping. Appellant noted "that the way that they got it was the same way we got it." Appellant then gave Cosey a piece of paper in which to wrap the sample.
 
 
 8
 Cosey returned with the sample to his car, where Agent Baker used a chemical field test to determine that the substance was indeed cocaine. Agent Baker signalled the members of a surveillance team concealed nearby, and agents closed in and made arrests.
 
 
 9
 On July 26, 1988, appellant was indicted by a grand jury in the Eastern District of Virginia on one count of conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 846, and one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1). He was tried by a jury on October 4, 1988, and found guilty on both counts. He was sentenced to 70 months imprisonment and fined $2,000 on each count concurrently. He was also ordered to undergo four years of supervised release at the conclusion of his penitentiary sentence, and ordered to pay a special assessment of $100. This appeal followed.
 
 II.
 
 10
 Appellant asserts that the evidence presented to the district court jury was insufficient to support a finding of guilt beyond a reasonable doubt on either of the counts of which he was convicted. We disagree.
 
 
 11
 On appeal of a criminal conviction, the jury verdict "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). The evidence presented by the Government in appellant's case is more than adequate to meet this standard.
 
 
 12
 Evidence was adduced at trial that appellant transported the cocaine to the scene, delivered it to Cosey, noted that the condition of the packaging of the cocaine was unchanged since its arrival, and remarked "the coke is in the box." Appellant also supplied Cosey with a piece of paper in which to wrap a sample of the cocaine. This evidence amply supports the jury finding that appellant knowingly possessed cocaine with the intent to distribute.
 
 
 13
 In addition, appellant's co-conspirator, McLaurin, testified that he had discussed with appellant the organization of his cocaine business and appellant's prospects for advancement within the business, and that appellant had been "more than eager" to enter the cocaine business. McLaurin's testimony clearly provides substantial evidence for the jury to convict appellant of knowingly conspiring to distribute and possess with intent to distribute cocaine.
 
 
 14
 Appellant argues that he did not know the contents of the cardboard box, did not know that cocaine was involved in the transaction with Cosey, and did not know that McLaurin was in any way involved in cocaine trafficking. In effect, appellant contends that the testimony of the Government's witnesses is not credible and that instead his testimony should be credited. Such a determination is not for this court to make, however. Assessment of the credibility of witnesses is within the sole province of the jury. Pigford v. United States, 518 F.2d 831, 836 (4th Cir.1975). The jury, through its verdict, found the Government's witnesses credible and appellant incredible. That determination will not now be questioned.
 
 The judgment of conviction is hereby
 
 15
 AFFIRMED.